IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| SLEEKEZ, LLC,<br><br>                Plaintiff,<br><br>vs.<br><br>HAL HORTON, doing business as Groom Ninja,<br><br>                Defendant. | CV 16-09-BLG-SPW-TJC<br><br>**FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

Plaintiff SleekEZ, LLC ("Plaintiff" or "SleekEZ") brings this action against Defendant Hal Horton, doing business as Groom Ninja ("Defendant") for various business torts, including misappropriation of trade secrets, relating to animal grooming products developed and sold by Plaintiff. (Doc. 1.)

Judge Watters has referred the case to the undersigned under 28 U.S.C. § 636(b)(1)(B). (Docs. 10, 40.) Presently before the Court is Plaintiff's Motion to Amend (Doc. 35), and Defendant's Motion to Strike the Amended Complaint. (Doc. 37.) The motions are fully briefed and ripe for the Court's review. (Docs. 36, 38, 39, 41.)

1

Having considered the parties' submissions, the Court **RECOMMENDS** Plaintiff's Motion to Amend be **GRANTED**, and Defendant's Motion to Strike be **DENIED**.

## I. BACKGROUND

Plaintiff is in the business of developing, marketing, and selling custom-manufactured grooming tools for horses and other animals. (Doc. 1 at ¶ 8.) Plaintiff alleges its products use a unique and proprietary handle, adhesion, and blade. (*Id.*) Plaintiff alleges it has invested substantial time and resources in developing the components of its tools, identifying manufacturers, marketing to distributors, retailers, and customers, and developing marketing and business strategies, all of which constitute confidential proprietary information and trade secrets. (*Id.* at ¶¶ 9-11.)

Between 2002 and 2014, Plaintiff's owner, Jennifer Tipton was in a relationship with Defendant. (*Id.* at ¶¶ 7, 12.) Plaintiff alleges that the relationship created "certain obligations and duties," including "the creation of a fiduciary relationship" owed by Defendant to Plaintiff. (*Id.*) Defendant was also employed by Plaintiff to work on a marketing strategy for the company. (*Id.* at ¶ 13.) As part of his job duties, Defendant learned confidential and proprietary information about Plaintiff's business and products. (*Id.* at ¶¶ 13-14.) Plaintiff asserts that Defendant

knew the information was meant to be kept secret, and that he knew he had an obligation to keep it confidential. (*Id.*)

Plaintiff alleges that in late May 2014, Defendant's employment was terminated. (*Id.* at ¶ 16.) Thereafter, Plaintiff claims Defendant began selling knockoffs of Plaintiff's products. (*Id.* at ¶ 17.) Plaintiff alleges Defendant also stole blade components from Plaintiff and incorporated them into his product called "Groom Ninja." (*Id.* at ¶ 17-18.) Plaintiff further alleges Defendant copied Plaintiff's proprietary handle design, used his knowledge of Plaintiff's manufacturers, distributors, and retailers to advance his imitation products, and has misrepresented himself as being affiliated with SleekEZ. (*Id.* at ¶¶ 19-25.)

Plaintiff initiated this action on February 16, 2016. (Doc. 1.) The Complaint alleged seven causes of action: (1) misappropriation of trade secrets under Montana's Uniform Trade Secrets Act, Mont. Code Ann. §§ 30-14-401 et seq.; (2) tortious interference with business relations and prospective business relations; (3) breach of fiduciary duty; (4) conversion and civil theft; (5) civil conspiracy; (6) preliminary and permanent injunction; and (7) accounting. (*Id.*)

On June 2, 2016, Magistrate Judge Ostby issued a Scheduling Order that provided a "Motions to Amend Pleadings (Including Joinder of Parties)" deadline of July 20, 2016. (Doc. 15.) Subsequently, the Scheduling Order was amended three times. First, on July 6, 2016, Judge Ostby granted the parties' request for

extension of time via a minute order that stated "[t]he parties have until July 28, 2016, to amend pleadings." (Doc. 19.) Second, on July 22, 2016, Judge Ostby issued an order extending the deadlines that stated "Amendment of Pleadings" were due September 1, 2016. (Doc. 25.) Finally, on September 30, 2016, Judge Ostby issued an Amended Scheduling Order that stated "Motions to Amend Pleadings (Including Joinder of Parties)" were due October 21, 2016. (Doc. 33.)

On October 21, 2016, Plaintiff filed an Amended Complaint. (Doc. 34.) The Amended Complaint dropped the civil conspiracy claim and added a cause of action for misappropriate of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836. (*Id.* at ¶¶ 37-45.) Plaintiff did not seek leave prior to filing the Amended Complaint.

On November 3, 2016, Plaintiff filed the instant Motion to Amend, indicating Plaintiff believed the Court's Scheduling Orders gave it the ability to amend the pleadings as a matter of right until October 21, 2016. (Doc. 35.) Plaintiff requests the Court find Plaintiff was allowed to amend the Complaint as a matter of right, or alternatively grant Plaintiff leave to amend under Federal Rule of Civil Procedure 15(a)(2).

On November 16, 2016, Defendant filed the instant Motion to Strike the Amended Complaint on grounds that Plaintiff failed to comply with the Amended

4

Scheduling Order. (Doc. 37.) Defendant also argues Plaintiff should not be granted leave to amend because amendment would be futile. (*Id.*)

## II. ANALYSIS

### A. Defendant's Motion to Strike

Plaintiff states that at the Preliminary Pretrial Conference, the deadline for amendment of the pleadings was "discussed as a deadline to amend as a matter of right." (Doc. 36 at 2.) However, the plain language of the Scheduling Order, which was issued immediately following the Preliminary Pretrial Conference, specified that the deadline was a *motion* filing cutoff. (*See* Doc. 15 ("Motions to Amend Pleadings (Including Joinder of Parties) July 20, 2016").) The Amended Scheduling Order repeated that it was a *motion* filing deadline. (Doc 33 ("Motions to Amend Pleadings (Including Joinder of Parties) October 21, 2016").) Although the Court was not privy to the discussions that took place at the Preliminary Pretrial Conference, the Court notes that in a factually similar case, Judge Ostby specifically rejected the argument Plaintiff asserts here.

In *Thiel v. Veneman*, 2011 WL 13073722, *1 (D. Mont. May 13, 2011), the plaintiff filed an amended complaint on the deadline set forth in the Court's scheduling order for "Motions to Amend Pleadings (Including Joinder of Parties)." The defendant moved to strike the pleading for failure to comply with the scheduling order. *Id.* The plaintiff argued she was not required to seek leave of

5

Court or the defendant's consent prior to filing the amended complaint, under the terms of the scheduling order. *Id.* Judge Ostby disagreed, and held the phrase "Motions to Amend Pleadings (Including Joinder of Parties)" meant "that March 18 was the deadline for filing <u>motions</u> to amend, not the deadline for filing amendments absent motions." *Id.* (emphasis in original). Therefore, it appears Judge Ostby's practice was to issue a motion filing deadline for the amendment of pleadings. Accordingly, October 21, 2016 was the deadline for Plaintiff to file a motion to amend, not a deadline for the filing of amended pleadings as a matter of right. Thus, Plaintiff's unilateral filing of the Amended Complaint was improper.

The Court recognizes, however, that there is some inconsistency in the record regarding the motion to amend deadline. After the initial Scheduling Order was filed, but before the Amended Scheduling Order was issued, the Court continued the pretrial deadlines twice. The first continuance referred to the deadline as the last day "to amend pleadings" (Doc. 19), and the second continuance gave a deadline for "Amendment of Pleadings." (Doc. 25.) The Court does not believe the abbreviated nature of the continuance orders changed Plaintiff's obligation to file a motion to amend,[1] particularly in light of the final Amended Scheduling Order that clearly stated the deadline was for filing "*Motions*

---

[1] The first continuance was granted by minute order. (Doc. 19.) For the second continuance, it appears the Court adopted the parties' proposed order. (Docs. 21-1, 25.)

to Amend Pleadings." (Doc. 33 (emphasis added).) Nevertheless, due to the possible confusion, the Court will give Plaintiff the benefit of the doubt, and will not strike the Amended Complaint for failure to comply with the Amended Scheduling Order. However, the Court declines to find Plaintiff was permitted to amend the Complaint as a matter of right. Rather, the Court will address whether Plaintiff should be granted leave to amend, and will treat the Amended Complaint as if it had been lodged as an exhibit to Plaintiff's Motion to Amend pursuant to Local Civil Rule 15.1.

Accordingly, the Court **RECOMMENDS** that Defendant's Motion to Strike the Amended Complaint be **DENIED**.

B. Plaintiff's Motion to Amend

Federal Rule of Civil Procedure 15(a)(2) provides in relevant part that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."[2] Although Rule15(a)(2) provides that leave to amend shall be freely given, it "is not to be granted automatically." *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (quoting *Jackson v. Bank of Hawaii*, 902

---

[2] Although Plaintiff's Motion to Amend was filed after the deadline set forth in the Scheduling Order for motions to amend, the Court will review Plaintiff's motion pursuant to Rule 15(a)(2) because of the previously noted uncertainty regarding the Amended Scheduling Order. Defendant indicates it does not object to the Court applying the standard under Rule 15(a)(2). (*See* Doc. 38 at 6.)

F.2d 1385, 1387 (9th Cir. 1990)). Courts consider the following five factors when determining whether to grant leave to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). "Absent prejudice, or a strong showing of any of the remaining [] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (emphasis in original). Of these factors, prejudice to the opposing party carries the greatest weight. *Id.* However, futility of amendment alone can be a basis to deny leave to amend. *Ahlmeyer v. Nevada System of Higher Educ.*, 555 F.3d 1051, 1055 (9th Cir. 2009).

Here, the parties do not dispute any of the factors except futility.[3] As noted, Plaintiff seeks to amend the Complaint to assert a cause of action for misappropriate of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1839 ("DTSA"). Plaintiff argues the DTSA claim is adequately pled. (Doc. 36.)

---

[3] Plaintiff contends that there has been no bad faith or undue delay on its part, and that Defendant will not be prejudiced. Defendant does not contest Plaintiff's claims with regard to the first, second, and third factors. Defendant makes clear that he only challenges Plaintiff's motion to amend on the basis of futility. The Court also notes that this is the first time Plaintiff has amended its Complaint.

Defendant counters that Plaintiff's claim fails as a matter of law, and therefore amendment should not be allowed. (Doc. 38.)

"[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). The test for futility is identical to the test courts apply when considering the sufficiency of a pleading under Federal Rule of Civil Procedure 12(b)(6). *Id.* A complaint need not contain detailed factual allegations, however, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

To assert a claim under the DTSA, Plaintiff must establish it is the owner of a trade secret that has been misappropriated. 18 U.S.C. § 1836(b)(1). The DTSA defines a "trade secret" as information (1) the owner has taken reasonable measures to keep secret, and (2) that derives independent economic value from not being generally known or readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the

information. 18 U.S.C. § 1839(3). "Misappropriation" is defined in several different ways, including:

> "disclosure or use of a trade secret of another without express or implied consent by a person who --
> . . .
> (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was --
> . . .
>    (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>
>    (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret.

18 U.S.C. § 1839(5)(B)(ii)(II)-(III).[4]

The DTSA went into effect on May 11, 2016. 18 U.S.C. §1839, Publ. L. 114-32, 130 Stat. 376. Therefore, to assert a claim under the Act, Plaintiff must allege an act of misappropriation occurring after the implementation date. *Id. See also Adams Arms, LLC v. Unified Weapons Systems, Inc.*, 2016 WL 5391394 (M.D. Fla. Sept. 27, 2016); *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Group, Inc.*, 2016 WL 5338550 (S.D.N.Y. Sept. 23, 2016).

Defendant contends Plaintiff's allegations fall short because Plaintiff fails to allege (1) what specific efforts were made to maintain the secrecy of the trade secrets, (2) facts regarding the parties' relationship that would have imposed a duty

---

[4] Plaintiff relies solely on 18 U.S.C. § 1839(5)(B)(ii)(II)-(III) as the basis for its claim of misappropriation under the DTSA. (*See* Doc. 34 at ¶¶38.)

10

on Defendant to maintain the secrecy of the trade secrets, and (3) that conduct occurred after the implementation date of the DTSA. Plaintiff counters that its pleading is sufficient because it has (1) identified efforts it made to maintain secrecy, (2) alleged circumstances giving rise to Defendant's duty to maintain secrecy, and (3) claimed Defendant continued to use Plaintiff's trade secrets after May 11, 2016. The Court agrees with Plaintiff.

First, trade secret allegations are adequate "in instances where the information and the efforts to maintain its confidentiality are described in general terms." *Covenant Aviation Sec., LLC v. Berry*, 15 F.Supp.3d 813, 818 (N.D. Ill. 2014). *See also Mission Measurement Corp. v. Blackbaud, Inc.*, 2016 WL 6277496, *5 (N.D. Ill. Oct. 27, 2016). Here, the proposed Amended Complaint generally describes Plaintiff's trade secret information as the components of its grooming tools, its manufacturers, distributors, retailers, industry contacts and customers, and its marketing and business strategies. (Doc. 34 at ¶¶ 8-10.) The proposed Amended Complaint also alleges Plaintiff undertook reasonable steps to maintain the secrecy of its trade secrets by "not having this information accessible to the public; only having portions of this information known on a need-to-know basis by those SleekEZ worked with or employed; having it known that this information was to remain confidential; having SleekEZ's business accounts password protected; having SleekEZ's business accounts only known to Jennifer

Tipton, except as they were divulged to Hal Horton in light of the position of trust he held and at his insistence that he would need to know them when acting as SleekEZ's agent and/or employee for marketing and sales purposes." (Doc. 34 at ¶ 27.) Based on these allegations, the Court finds Plaintiff has plausibly alleged it took reasonable measures to protect its trade secrets.

Second, in general the question of whether there is a duty to maintain secrecy in trade secret misappropriation cases is a highly fact-specific inquiry. *See Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F.Supp.2d 911, 959 (C.D. Cal. 2011). Although the owner of a trade secret cannot unilaterally create a confidential relationship, "no particular form of notice is needed; the question raised is whether the recipient of the information knew or should have known that the information was a trade secret and the disclosure was made in confidence." *Phillips v. Frey*, 20 F.3d 623, 632 (5th Cir. 1994). The lack of a confidentiality agreement is not dispositive on the issue of whether there was duty to maintain secrecy. *Hilderman v. Enea TekSci, Inc.*, 551 F.Supp.2d 1183, 1201 (S.D. Cal. 2008). A company can take "other precautions to keep its information secret, such as verbally telling its clients and employees that the information was confidential or limiting access to information on a 'need to know' basis." *Id. See also Beard Research, Inc. v. Kates*, 8 A.3d 573, 590 (Del. Ch. 2010) (noting the Delaware Uniform Trade Secrets Act, which is substantially similar to the DTSA, "does not require [] any

showing that a former employee had a written employment contract or nondisclosure or noncompetition agreement to prove liability for misappropriation of a trade secret"). In addition, a duty to maintain confidentiality can be based on a close personal relationship. *See e.g. Elm City Cheese Co., Inc. v. Federico*, 752 A.2d 1037, 1052 (Conn. 1999) (concluding that in light of the close personal relationship between the parties, "it was reasonable for [plaintiff] to assume that it had nothing to fear from [defendant] in the way of misappropriation . . . and, therefore, [plaintiff's] decision not to take affirmative steps to ensure the secrecy of its information with respect to [defendant] constituted 'reasonable efforts under the circumstances'").

Here, the proposed Amended Complaint alleges Defendant's duty to maintain secrecy was based on the parties' personal relationship, as well as their professional relationship. Plaintiff states that Defendant and Ms. Tipton had a 12-year long relationship that gave rise to a fiduciary relationship. (Doc. 34 at ¶ 11.) Plaintiff further alleges that Defendant was employed by SleekEZ to work on a marketing strategy for the company. (*Id.* at ¶ 12.) Plaintiff states that as part of Defendant's job duties, he learned confidential information regarding Plaintiff's products, business strategies and methods, and that he "knew that this information was meant to be kept in confidence and secret, and he had an obligation to keep

this information confidential and secret." (*Id.*) The Court finds Plaintiff has alleged plausible grounds for a duty of secrecy.

Third, the question of whether pre-enactment conduct is actionable under the DTSA depends on Plaintiff's theory of liability. *High 5 Games, LLC v. Marks*, 2017 WL 349375, *6 (D.N.J. Jan. 24, 2017). Under the DTSA, prohibited misappropriation includes both the acquisition of a trade secret and its disclosure or use. 18 U.S.C. § 1839(5). Under an "acquisition" theory of liability, a DTSA claim is only actionable if the trade secret was acquired after the effective date of the Act. *Adams Arms, LLC*, 2016 WL 5391394 at *6-7. However, under a "disclosure/use" theory of liability, a DTSA claim is actionable when the disclosure or use continued to occur after the effective date. *Id.* For example, in *Adams Arms*, the defendant acquired the plaintiff's confidential information before the effective date of the Act, and disclosed the confidential information in a contract that was signed after the effective date. *Id.* at *6. The Court determined that the plaintiff could not recover based on the improper acquisition of its trade secrets. *Id.* However, the court allowed the claim to go forward because a partial recovery was available based on the disclosure of the trade secrets that occurred after the Act was enacted. *Id.* at *6-7. *See also Brand Energy & Infrastructure Services, Inc. v. Irex Contracting Group*, 2017 WL 1105648, *4 (E.D. Pa. March 24, 2017) (holding the plaintiff could pursue a DTSA claim where the complaint

alleged "multiple uses of its trade secrets that continued to occur after the date the DTSA was enacted."); *Syntel Sterling Best Shores Mauritius Ltd.*, 2016 WL 5338550 at *6 (granting defendants leave to amend their counterclaim to bring a DTSA claim based on defendants' allegations that the plaintiff continued to use its intellectual property to directly compete with defendant after the effective date of the DTSA).

Here, Plaintiff is pursuing a disclosure/use theory of liability. (Doc. 34 at 29.) The proposed Amended Complaint alleges that Defendant has continued to use Plaintiff's trade secrets "by openly selling a product called 'Groom Ninja.'" (Doc. 34 at ¶ 17.) The Court finds Plaintiff has plausibly alleged a continuing misappropriation after the effective date of the DTSA.[5]

In sum, the Court finds the proposed Amended Complaint includes sufficient factual allegations to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. *See also Chubb Ina Holdings Inc. v. Chang*, 2017 WL 499682, *10 (D.N.J. February 7, 2017) (noting that there is no heightened pleading standard for DTSA claims, thus a plaintiff "need not make out specific allegations as to exactly how Defendants used or disclosed Plaintiff[s'] trade secrets . . . Plaintiff[s are] entitled to seek discovery to support [their] allegations setting forth a prima

---

[5] The Court notes that Plaintiff's potential recovery on Count Two of the proposed Amended Complaint may only be available for acts of misappropriation that occurred after May 11, 2016. *See Adams Arms, LLC*, 2016 WL 5391394 at *6-7.

face claim.") Accordingly, the Court finds the proposed First Amended Complaint is not futile, and therefore **RECOMMENDS** that leave to amend be **GRANTED**.

**III. CONCLUSION**

Based on the foregoing, **IT IS RECOMMENDED** that Plaintiff's Motion to Amend (Doc. 35) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that Defendant's Motion to Strike (Doc. 37) be **DENIED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 21st day of April, 2017.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge