IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| SLEEKEZ, LLC, | CV 16-09-BLG-SPW-TJC |
| Plaintiff, | |
| vs. | **FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| HAL HORTON, doing business as Groom Ninja, | |
| Defendant. | |

Plaintiff SleekEZ, LLC ("Plaintiff" or "SleekEZ") brings this action against Defendant Hal Horton, doing business as Groom Ninja ("Defendant"), for misappropriation of trade secrets and other business torts relating to animal grooming products developed and sold by Plaintiff.  (Doc. 57.)

Judge Watters has referred the case to the undersigned under 28 U.S.C. § 636(b)(1)(B).  (Docs. 10, 40.)  Presently before the Court is Defendant's Motion in Limine to Exclude Testimony of James Winchell (Doc. 59), and Defendant's Motion for Summary Judgment (Doc. 61).  The motions are fully briefed and ripe for the Court's review.  (Docs. 60, 62, 67, 71, 72, 74.)

1

Having considered the parties' submissions, the Court **RECOMMENDS** that Defendant's Motion in Limine to Exclude Testimony of James Winchell be **DENIED**, and Defendant's Motion for Summary Judgment be **DENIED**.

## I.   BACKGROUND[1]

Plaintiff SleekEZ is a business owned by Jennifer Tipton.  (Doc. 9 at ¶ 3.) SleekEZ is in the business of developing, marketing, and selling custom-manufactured grooming tools for horses and other animals.  (*Id.* at ¶ 4.)  Defendant Hal Horton, doing business as Groom Ninja, sells a competing grooming tool.  (*Id.* at ¶ 9; Doc. 69 at ¶ 3.)

Mr. Horton and Ms. Tipton have had a long personal and professional relationship.  They began dating in 2002, and were in a romantic relationship for approximately seven years.  (Doc. 69 at ¶ 17.)  After their romantic relationship ended in 2009, they continued a personal friendship.  (*Id.* at 18.)

In 2009, Ms. Tipton began developing the SleekEZ grooming tool.  (Doc. 69 at ¶ 27.)  Prior to developing the SleekEZ tool, Ms. Tipton was aware of a grooming tool called the Magic Stick, which appeared to be a hacksaw blade and a piece of wood.  (*Id.* at ¶¶ 30-32.)  Ms. Tipton studied the Magic Stick's features,

---

[1] The background facts are taken from the parties' Joint Statement of Stipulated Facts (Doc. 9), Defendant's Statement of Undisputed Facts (Doc. 63), and Plaintiff's Statement of Disputed Facts (Doc. 69), and are undisputed except where indicated.

and through a trial and error process, developed the SleekEZ tool, which she describes as a superior product that has a better handle, blade, and construction. (*Id.* at ¶ 32.)  The SleekEZ tool is composed of a wooden handle, with an elongated blade slot along the length of the handle, and a blade.  (*Id.* at ¶¶ 22-23.)  A portion of the blade is recessed in the blade slot and secured within the slot with an adhesive.  (*Id.* at ¶ 23.)  The blade has teeth that form a wave configuration.  (*Id.* at ¶ 24.)  The handle of the SleekEZ tool is convex in shape and can be held using two hands.  (*Id.* at ¶ 25.)

Ms. Tipton began selling the SleekEZ grooming tool in 2010.  (*Id.* at ¶ 28.) Sometime after 2012, Ms. Tipton hired Mr. Horton to work on sales and marketing for SleekEZ.  (*Id.* at ¶ 11.)  Although it is disputed whether he was actually an employee, it is undisputed that Mr. Horton was compensated by SleekEZ for his work.  (*Id.* at ¶¶ 12, 13; Doc. 9 at ¶ 7.)  Mr. Horton's relationship with SleekEZ was terminated in 2014.  (*Id.* at ¶ 19.)

After Mr. Horton left SleekEZ, he began selling a grooming tool called the Groom Ninja.  (Doc. 69 at ¶ 1.)  Like the SleekEZ, the Groom Ninja tool is comprised of three components.  It has a wooden handle, a blade that can be described as a band saw or a hacksaw blade, and adhesive.  (*Id.* at ¶ 5.)  The handle of the Groom Ninja has a "C" shaped indentation on one side.  (*Id.* at ¶ 7; 76.)

Plaintiff claims Mr. Horton used trade secret information developed by SleekEZ in his production of the Groom Ninja.  (*Id.* at ¶ 20.)

Plaintiff uses multiple manufacturers and suppliers to produce the SleekEZ grooming tool.  (Doc. 69 at ¶ 39.)  Plaintiff has an exclusive contract with Diamond Saw, which is the company that supplies SleekEZ's blade component. (*Id.* at ¶ 40.)  Aside from Diamond Saw, Plaintiff has not entered into formal written confidentiality agreements with any independent contractors, suppliers, wholesale customers, marketers, or manufacturers, with regard to the SleekEZ products that are currently on the market.  (*Id.* at ¶ 42-43.)  Mr. Horton does not use any of Plaintiff's manufacturers in his production of the Groom Ninja.  (*Id.* at ¶ 48.)

Plaintiff also did not have a written confidentiality agreement with Mr. Horton.  Nevertheless, Plaintiff contends that Mr. Horton held a position of trust at SleekEZ due to his close personal relationship with Ms. Tipton, and that he knew the information he obtained was meant to be kept confidential.  (Doc. 69 at ¶ 47.)

Plaintiff initiated this action on February 16, 2016.  (Doc. 1.)  On May 12, 2017, an Amended Complaint was filed.  (Doc. 57.)  Plaintiff asserts claims for (1) misappropriation of trade secrets under Montana's Uniform Trade Secrets Act; (2) misappropriation of trade secrets under the Defend Trade Secrets Act; (3) tortious interference with business relations and prospective business relations; (4) breach

of fiduciary duty; (5) conversion and civil theft; (6) preliminary and permanent injunction; (7) accounting; and (8) punitive damages.  (*Id.*)

On February 21, 2017, Plaintiff disclosed James Winchell as a damages expert, and produced his expert report.  (Doc. 60-1 at 36-40; 65-73.)

Defendant now moves to exclude the testimony of Mr. Winchell, and further moves for summary judgment on all of Plaintiff's claims.  (Docs. 59, 61.)

## II.  MOTION TO EXCLUDE TESTIMONY OF JAMES WINCHELL

### A.  <u>Legal Standard</u>

Federal Rule of Evidence 702 controls the admissibility of expert opinion testimony.  It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed.R.Evid. 702.

"Although Rule 702 should be applied with a 'liberal thrust' favoring admission, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993), it requires that '[e]xpert testimony be both relevant and reliable[.]'"  *Messick v.*

5

*Novartis Pharm. Corp*., 747 F.3d 1193, 1196 (9th Cir. 2014).  The trial court acts as a gatekeeper by excluding evidence that does not meet standards of relevance and reliability.  *Id.*  "The relevancy bar is low, demanding only that the evidence 'logically advances a material aspect of the proposing party's case.'"  *Id.* (quoting *Daubert*, 43 F.3d at 1315).   Expert opinion testimony "is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010).  The trial court retains broad discretion to decide whether to admit expert testimony, and also retains "the same kind of latitude in deciding *how* to test an expert's reliability." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (emphasis in original) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151 (1999)).

The Court should screen out "unreliable nonsense opinions, but not exclude opinions merely because they are impeachable."  *Alaska Rent-A-Car Inv. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (finding the defendant's challenges to the plaintiff's expert's assumptions and comparisons went to the weight of the testimony and its credibility, not to admissibility).  "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564.  *See also Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 n. 14 (9th Cir. 2004) (noting "the factual basis of an expert opinion goes to the credibility of

the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.") (quoting *Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 865 (8th Cir. 2004)).

**B.**   **Discussion**

Plaintiff retained James Winchell to provide an opinion regarding the "economic loss to SleekEZ resulting from alleged use or sharing of SleekEZ's trade secrets, confidential information, intellectual property, data or business opportunities by Hal Horton d/b/a Groom Ninja." (Doc. 60-1 at 65.) Mr. Winchell opined that Plaintiff's total damages for 2015 through June 30, 2017 are estimated to be $787,908. (*Id.* at 66.) Mr. Winchell arrived at his conclusion by taking Defendant's sales revenues and applying Plaintiff's gross profit margin. (*Id.* at 67-68.)

Defendant argues Mr. Winchell's opinion should be excluded because the opinion is based on the false assumption that Plaintiff would have captured 100% of Defendant's sales if the Groom Ninja tool was not for sale. Defendant argues this assumption is erroneous because there are numerous other competitors in the horse comb industry. Defendant also contends Mr. Winchell failed to do a market share analysis, and failed to consider Plaintiff's ability to scale her marketing and manufacturing.

Plaintiff counters that it is entitled to damages for both actual loss and unjust enrichment caused by trade secrete misappropriation.  Plaintiff maintains that Mr. Winchell testimony goes to both categories of damages, and that unjust enrichment does not require consideration of other competitors, market share, and scalability. Plaintiff also argues that Defendant's challenges to Mr. Winchell's testimony go to its weight, rather than its admissibility.

Defendant does not challenge Mr. Winchell's qualifications, and it appears that Plaintiff has the ability to qualify Mr. Winchell as a damages expert.  Mr. Winchell is a Certified Public Accountant and Certified Valuation Analyst.  (Doc. 60-1 at 70-71.)  The Plaintiff has also produced Mr. Winchell's curriculum vitae, which further documents his professional education, training, and experience.  (*Id.*)

The Court also finds that Mr. Winchell's opinions meet the threshold relevance and reliability requirements.  Although Defendant's challenges to Mr. Winchell's assumptions are colorable, they do not go to admissibility.  They go to the weight of the testimony and its credibility.  The factual basis for Mr. Winchell's opinion, and any limitations arising from the assumptions upon which he formed his opinion, are proper subjects for cross-examination.  *See Alaska Rent-A-Car Inv.*, 738 F.3d at 969.

Accordingly, the Court will recommend that Defendant's Motion in Limine to Exclude Testimony of James Winchell be **DENIED**.

8

## III.   MOTION FOR SUMMARY JUDGMENT

### A.   <u>Legal Standard</u>

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party.  *Id*.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  The moving party can satisfy this burden in two ways:  (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *Id.* at 322-23.   If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider

the nonmoving party's evidence. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party must "go beyond the pleadings and by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The opposing party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 252).

When making this determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury

functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact. *Kennan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)).

**B.     Misappropriation of Trade Secrets**

As discussed above, Plaintiff asserts that Defendant used or disclosed trade secret information, and has asserted claims under Montana's Uniform Trade Secret Act ("MUTSA") and the Defend Trade Secrets Act ("DTSA"). Plaintiff has alleged four areas of trade secret information relating to the SleekEZ grooming tool:  (1) a future[2] "C" shape handle design developed by Plaintiff, and the research and customer feedback related to the design; (2) the design features of the SleekEZ blade, including its wave pattern and varying tooth pitch; (3) the

---

[2] It does not appear that Plaintiff currently uses a "C" shaped handle design. The pictures the parties submitted of the SleekEZ grooming tool show the handle is oval shaped. As the Court understands Plaintiff's argument, Plaintiff was planning to implement a concave, or "C" shaped handle into its product at some point in the future.

manufacturing process and design features that were chosen for efficient

manufacturing purposes; and (4) sales information and marketing strategy.  (Doc.

71 at 9-10.)

To assert a claim under both the MUTSA and the DTSA, a plaintiff must

establish it is the owner of a trade secret that has been misappropriated.  18 U.S.C.

§ 1836(b)(1); Mont. Code Ann. § 30-14-402.  Under both Acts, a "trade secret" is

defined as information (1) the owner has taken reasonable measures to keep secret,

and (2) that derives independent economic value from not being generally known

or readily ascertainable through proper means by another person who can obtain

economic value from the disclosure or use of the information.  18 U.S.C. §

1839(3); Mont. Code Ann. § 30-14-402(4).  "Misappropriation" under both Acts

means the use or disclosure of a trade secret of another without express or implied

consent, by a person who, at the time of the disclosure or use, knew or had reason

to know that the person's knowledge of the secret was acquired under

circumstances giving rise to a duty to maintain the information's secrecy or limit

its use.  18 U.S.C. § 1839(5); Mont. Code Ann. § 30-14-402(2).

Defendant contends Plaintiff cannot prove misappropriation of trade secrets

under either the MUTSA or the DTSA.  Defendant argues Plaintiff cannot establish

that it possessed a trade secret, because it did not take reasonable efforts to

maintain the secrecy of any aspect of its business, and the alleged trade secrets are

either generally known, or readily ascertainable.  Defendant further argues Plaintiff

cannot establish the misappropriation requirement, since Defendant did not use or

disclose any alleged trade secret.

Plaintiff counters that genuine issues of material fact exist, because there is

evidence to show Plaintiff took reasonable measures to keep its trade secrets

confidential; there is disputed evidence regarding whether SleekEZ trade secrets

were generally known or readily ascertainable; and there is also evidence to

establish Defendant used Plaintiff's trade secrets.

1.    Reasonable Measures to Maintain Secrecy

As noted above, Defendant first argues Plaintiff did not take reasonable

efforts to maintain the secrecy of the alleged trade secret information.  Defendant

points out that Plaintiff did not have written confidentiality agreements with its

manufacturers,[3] suppliers, employees, or with Mr. Horton, and claims Ms. Tipton

never told Mr. Horton to keep anything secret.  (Doc. 63 at ¶¶ 42-44, 47.)

Defendant also asserts Plaintiff publicly disclosed her trade secrets in her patent

application.

Whether a plaintiff's actions to maintain the secrecy of any trade secret

information were reasonable under the circumstances is a fact-intensive inquiry.

---

[3] Plaintiff has entered a confidentiality agreement with a molding company for a
product that is not yet on the market.  The agreement was not entered until after
Mr. Horton stopped working for Plaintiff.  (Doc. 69 at ¶¶ 44-45.)

*Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F.Supp.2d 911, 959 (C.D. Cal. 2011)

citing *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 925 F.2d 174, 179 (7th Cir.

1991) (noting that "only in an extreme case can what is a 'reasonable' precaution

be determined on a motion for summary judgment").  Here, the Court finds

genuine issues of material fact exist regarding whether the efforts Plaintiff took to

protect its trade secrets were reasonable.

Plaintiff asserts that it took measures to protect its trade secrets by limiting

access to the design and manufacturing process on a "need to know" basis.  In her

declaration, Ms. Tipton states she only discloses discrete parts of her business to

each of her suppliers, manufacturers and employees, and none of them know the

process as a whole.  (Doc. 69-3 at ¶¶ 28-29.)  She also states that they all are aware

that any design or other information acquired through their work with SleekEZ

must remain confidential.  *Id.*  Such cautionary measures can support the

conclusion that reasonable measures were taken to protect trade secrets.  *See e.g.*

*Hilderman v. Enea TekSci, Inc.*, 551 F.Supp.2d 1183, 1201 (S.D. Cal. 2008)

(stating company can take "other precautions to keep its information secret, such as

verbally telling its clients and employees that the information was confidential or

limiting access to information on a 'need to know' basis.")

With regard to Mr. Horton, Plaintiff contends that, based on his relationship

with Ms. Tipton and his position of trust, Mr. Horton knew he was supposed to

14

keep Plaintiff's information secret.  (*Id.* at ¶¶ 18.a-18.c; 47.a.)  Plaintiff points to

Mr. Horton's deposition testimony, where he admitted he knew he was trusted with

Plaintiff's confidential information and knew it was to be kept confidential.  (Doc.

69 at ¶ 47.b)  Given the unique circumstances of the parties' relationship, and Mr.

Horton's alleged position of trust, the fact Plaintiff did not have written

confidentiality agreements is not dispositive on the issue of secrecy.  *See e.g., Elm*

*City Cheese Co., Inc. v. Federico*, 752 A.2d 1037, 1052 (Conn. 1999) (concluding

that in light of the close personal relationship between the parties, "it was

reasonable for [plaintiff] to assume that it had nothing to fear from [defendant] in

the way of misappropriation . . . and, therefore, [plaintiff's] decision not to take

affirmative steps to ensure the secrecy of its information with respect to

[defendant] constituted 'reasonable efforts under the circumstances'").  *See also,*

*Montana Silver Smiths, Inc. v. Taylor Brands, LLC,* 850 F.Supp. 1172, 1180 (D.

Mont. 2012) (employees have an implied obligation to not use employers trade

secrets even after employment terminates).

 Further, contrary to Defendant's argument, the patent disclosure does not

defeat Plaintiff's misappropriation claims.[4]  The patent disclosure only revealed

---

[4] Defendant also argues that because Plaintiff sought and obtained patent protection
for the SleekEZ grooming tool (U.S. Pat. No. 9,474,250), its trade secret and state
tort claims fundamentally fail, as its claims should have been brought as patent
infringement claims.  (Doc. 62 at 6.)  Plaintiff points out that its patent was not
granted until October 25, 2016, which was over a year and a half after Defendant

Plaintiff's trade secret information in its product design features, including the

wave pattern and varying tooth pitch.  (*See* Doc. 69-6 at 49-54.)  The patent did not

reveal the other trade secret information at issue, including the prospective "C"

shaped handle design and associated customer feedback, Plaintiff's manufacturing

process, or Plaintiff's sales information and marketing strategy.  *See SkinMedica,*

*Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1195 (S.D. Cal. 2012) ("[A] plaintiff

may certainly have a viable trade secret claim where the 'implementation details

and techniques' or other elements of the trade secret go beyond what was disclosed

in the patent.").

Accordingly, the Court finds there are triable issues regarding whether

reasonable measures were taken to keep Plaintiff's trade secrets confidential.

---

began selling the Groom Ninja tool, and eight months after Plaintiff filed this
action.  (*See* Doc. 69-6 at 49-54.)  Disclosure of a trade secret in a patent
application does not deprive Plaintiff of preexisting causes of action.  *Engelhard*
*Indus. Inc. v. Research Instrumental Corp.*, 324 F.2d 347, 352 (9th Cir. 1963)
(noting that "where, in advance of the granting of a patent, an invention is
disclosed to one who, in breach of the confidence thus reposed, manufactures and
sells articles embodying the invention, such person should be held liable for the
profits and damages resulting therefrom, not under the patent statutes, but upon the
principle that equity will not permit one to unjustly enrich himself at the expense
of another"); *Stutz Motor Car of Am. v. Reebok Intern., Ltd.*, 909 F.Supp. 1353,
1360 (C.D. Cal. 1995) (noting that where a patent had issued, the defendant could
still "be liable on plaintiff's trade secret claims for products incorporating the trade
secret that were sold by defendant prior to the issuance date of the patent").  The
Court finds, therefore, that Plaintiff may pursue its claims in this lawsuit despite
the issuance of the patent.

///

## 2.    Generally Known or Readily Ascertainable

Next, Defendant argues Plaintiff's misappropriation claims fail as a matter of law because its trade secrets were generally known and readily ascertainable. Defendant contends that Plaintiff's product is not original, and consists of just three visible parts that can easily be reverse-engineered.  Defendant points out that "do-it-yourself" instructions for how to make similar tools are available on-line. Defendant also argues Plaintiff's marketing techniques are also reasonably ascertainable because it uses popular online marketing platforms, such as Facebook, that are available to anyone.

In response, Plaintiff comes forward with evidence in the form of expert opinion that the SleekEZ product is "reasonably distinct in both form and function" from preexisting designs, and that it has design elements that were chosen as a result of trial and error for efficient manufacturability.  (Doc. 69-1 at 10-22.) Plaintiff also contends Defendant's reverse-engineering argument is tainted because Mr. Horton had access to Plaintiff's trade secrets.

Trade secret laws do "not offer protection against discovery by fair and honest means, such as by independent invention, accidental disclosure, or by so-called reverse engineering, that is by starting with the known product and working backward to divine the process which aided in its development or manufacture."

*Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 476 (1974).  However, even if a design could have been reverse-engineered, it may still be protected as a trade secret if duplicating the information would require a substantial amount of time and skill.  *AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp.*, 663 F.3d 966, 973 (8th Cir. 2011).

In addition, when a defendant has access to a plaintiff's trade secrets in the course of a confidential relationship, the defendant's subsequent manufacturer of a closely similar device shifts the burden to the defendant to show it independently developed its product.  *Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790, 793 (9th Cir. 1976); *Phillips v. Frey*, 20 F.3d 623, 629 (5th Cir. 1994).

Here, there are disputed issues of material fact as to whether the Plaintiff's claimed trade secrets were generally known and readily ascertainable.   According to Ms. Tipton's affidavit, she expended significant trial and effort to identify and develop the SleekEZ blade, as well as other design features that made manufacturing the tool efficient and profitable.  (Doc. 69-3 at ¶¶ 20-21, 26.) Plaintiff also proposes to introduce expert testimony to establish the uniqueness of the design of the product.  (Doc. 69-1.)

There are also disputed issues of material fact regarding whether Defendant developed the Groom Ninja tool by fair and honest means.  Plaintiff contends Defendant took the knowledge he learned from working for Plaintiff, and used it to

by-pass expending his own time and resources to develop his competing product. In this regard, Plaintiff's expert is expected to opine that Defendant's Groom Ninja tool is unlikely to be the result of a largely independent trial and error design and development process.  (Doc. 69-1 at 11-19.)

The parties also dispute how each developed the "C" shaped handle used in their products.  Plaintiff contends Ms. Tipton developed the "C" shaped handle design based on confidential customer feedback, and had experimented with different cutout designs for a new handle.  (Doc. 69-3 at ¶ 17; Doc. 69-5.) Defendant, on the other hand, contends he reverse-engineered his product by testing different handles, blades, adhesives, wood finishes, logos, and used help from a mill to develop the Groom Ninja's "C" shaped handle.  (Doc. 63-3 at 11-17; 69-14 at 3, 6-7.)

There are also disputed issues of fact with regard to marketing strategy. Although the internet platforms Plaintiff uses are generally ascertainable, Defendant has not shown that the sales information related to each platform, such as which method had the highest rate of return, or the analytics associated with each platform, are publicly available.  Defendant performed sales and marketing work for Plaintiff.  (Doc. 63-2 at ¶ 3; 69-3 at ¶ 14-15.)  During his work with SleekEZ, Plaintiff contends that Ms. Tipton gave Defendant access to her account

passwords and sales information, and that he was aware of which marketing efforts were successful or unsuccessful.  (Doc. 69-3 at ¶ 18, 23

Accordingly, the Court finds there are triable issues of fact regarding whether Plaintiff's trade secrets were generally known or readily ascertainable.

### 3.    Use or Disclosure of a Trade Secret

Finally, Defendant argues that, even assuming Plaintiff can prove it has a trade secret, Plaintiff cannot show misappropriation because Defendant did not use Plaintiff's alleged trade secrets.  Defendant argues the blade, glue and handle used in the Groom Ninja tool are different from what Plaintiff uses in the SleekEZ tool. (Doc. 63 at ¶15.)  Defendant also argues Plaintiff cannot identify any customers Defendant has stolen, or prove Defendant has accessed Plaintiff's accounts to take customer lists.  (Doc. 63 at ¶ 61-62, 65-66.)

Plaintiff counters that Defendant has unlawfully used its trade secrets. Plaintiff supports this contention with proposed expert testimony that the Groom Ninja's handle and blade replicates major design features of the SleekEZ tool, and that the products are effectively identical.  (Doc. 69-1 at 11-19.)

Plaintiff further contends that Defendant stole the idea for the Groom Ninja's "C" shaped handle from Ms. Tipton.  As discussed above, the Court has found there is a disputed question fact regarding the misappropriation of the handle design.  Plaintiff claims Ms. Tipton invented the "C" shaped handle design and

20

asserts Defendant was privy to the design (Doc. 69-3 at ¶ 17; Doc. 69-5), whereas Defendant claims he arrived at the "C" shaped design with the help of his mill. (Doc. 63 at ¶ 7; 63-3 at 11-17; 69-14 at 3, 6-7.)

Plaintiff further argues that while Defendant was employed by Plaintiff, he had full access to SleekEZ's accounts, and that Defendant has produced customer lists in discovery that show he in fact had Plaintiff's customer lists. (Doc. 69-3 at ¶ 23; 69-8.)

Accordingly, the Court finds there are disputed issues of fact regarding whether Defendant used Plaintiff's trade secret information.

### C. <u>Tortious Interference with Business Relations</u>

Defendant argues Plaintiff cannot prove tortious interference with its business relations because Defendant's actions were justified and lawful, and Defendant did not do anything more than compete with Plaintiff. Defendant further argues Plaintiff cannot prove any actual damages that resulted from sales of the Groom Ninja tool. Plaintiff counters that Defendant has intentionally and willfully used the information he gleaned through his position of trust to create a knock-off product, and has thereby caused damage to Plaintiff's business.

Under Montana law, to prove a claim for tortious interference with business relations, a plaintiff must show the acts "(1) were intentional and willful; (2) were calculated to cause damage to the pleader in his or her business; (3) were done with

21

the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the actor; and (4) that actual damages and loss resulted." *Richland Nat. Bank & Trust v. Swenson*, 816 P.2d 1045, 1051 (Mont. 1991).

Defendant argues there is no evidence he intended to harm Plaintiff's business. In response, Plaintiff points to evidence which creates material issues of fact on this issue. For example, Plaintiff offers Ms. Tipton's deposition testimony that Defendant told her he intended to harm her business out of spite because he had been fired.[5] (Doc. 69 at ¶ 47a; 69-12 at 117-18.)

Plaintiff also argues Defendant intentionally misappropriated confidential information with the purpose of damaging Plaintiff's business. The Court has already determined that there are disputed issues of material fact with regard to misappropriation. Plaintiff further asserts Defendant misrepresented himself as being affiliated with SleekEZ.[6] Plaintiff cites to evidence that Defendant created a

---

[5] Plaintiff also makes an unsupported assertion that Defendant "openly threatened to push SleekEZ out of the market by mass producing his product in China." (Doc. 71 at 23, *citing* ¶102 of Plaintiff's Statement of Disputed Facts.) However, the paragraph that Plaintiff cites in the Statement of Disputed Facts (Doc. 69 at ¶ 102) does not exist in any version filed with the Court.

[6] Again, some of Plaintiff's assertions are not supported. For example, Plaintiff claims Ms. Tipton was contacted by several individuals who claims they purchased a SleekEZ tool, but later realized they purchased a Groom Ninja. (Doc. 71 at 23, *citing* ¶103 of Plaintiff's Statement of Disputed Facts.) However, the referenced paragraph of the Statement of Disputed Facts (Doc. 69 at ¶ 103) does not exist in any version filed with the Court.

second "SleekEZ" account with Infusionsoft after he was terminated, and linked his account to SleekEZ's Google Analytics.  (Docs. 69 at ¶¶ 67.c, 68.6; 69-6 at 25-48; 69-9.)

Finally, as to the Defendant's contention that Plaintiff cannot prove actual damages as a result of the Groom Ninja sales, Plaintiff has come forward with an expert opinion to support its damages claim.  (Doc. 69-1 at 31-34.)  As discussed above, the Court has declined to strike Plaintiff's damages expert's opinion.

Therefore, the Court finds there are genuine issues of material fact with regard to Plaintiff's claim for tortious interference with business relationship.

## D.   **Breach of Fiduciary Duty**

Next, Defendant argues Plaintiff cannot establish a breach of fiduciary duty, because Defendant did not owe a fiduciary duty to Plaintiff, and Defendant has not disclosed or used Plaintiff's trade secrets.  Plaintiff contends Defendant owes fiduciary duties to Plaintiff based on their personal relationship of trust and confidence, and as an employee.

In Montana, "[t]he existence of a fiduciary duty depends upon satisfactory proof of a special relationship."  *Davis v. Church of Jesus Christ of Latter Day Saints*, 852 P.2d 640, 646 (Mont. 1993) (overruled on other grounds *Gliko v. Permann*, 130 P.3d 155 (Mont. 2006)).  Ordinarily, business relationships are not confidential relationships.  *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959

(11th Cir. 2009).  Where a relationship doesn't typically create a fiduciary duty,

the existence of a fiduciary duty depends upon satisfactory proof of a special

relationship or special circumstances.  *Deist v. Wachholz*, 678 P.2d 188, 193

(Mont. 1984) (noting that one who stands in a confidential relation to another may

have a fiduciary duty).  Whether a legal duty exits between two parties is a

question of law.  *Gliko v. Perman*, 130 P.3d 155, 161 (Mont. 2006).  But to

determine the existence a special relationship where it normally does not exist may

require a fact intensive inquiry.  *Id.*

Here, the Court finds there are disputed facts regarding the circumstances of

the parties' particular relationship.  Defendant argues that his prior relationship

with Ms. Tipton is not enough to create a fiduciary duty, and characterizes the

relationship as "just friends."  (Doc. 63 at ¶ 18.)  Plaintiff counters that Defendant

held a special position of trust with Ms. Tipton for several years as her romantic

partner, confident, advisor, and close personal friend.  (Doc. 69 at ¶¶ 17.a-17.b,

18.a.)  Plaintiff also points to Defendant's deposition testimony where he

acknowledged he had a duty of loyalty to Plaintiff.  (Doc. 69 at ¶ 47.b; 69-13 at 70-

72.)

In addition, there are issue of fact regarding Mr. Horton's former

employment status with Plaintiff, and whether that relationship created a fiduciary

duty.  Defendant asserts Mr. Horton was an independent contractor who performed

marketing work for Plaintiff in exchange for commissions, and that this was an ordinary business arrangement and nothing more.  (Doc. 63 at ¶¶ 12-13.)   In contrast, Plaintiff states Mr. Horton was hired as an employee, was given access to almost every aspect of Plaintiff's business, and was so integrated into the company, that Ms. Tipton and Defendant discussed a potential partnership.  (Doc. 69 at ¶¶ 12.a – 12.d; 8.c; 69-13 at 72.)

Finally, Defendant argues Plaintiff cannot establish a trade secret, and thus, cannot show Defendant breached any duty by producing a competing product.  The Court has already determined, however, that there are disputed issues of material fact with regard to Plaintiff's trade secret claims.

Accordingly, the Court finds there are genuine issues of material fact with regard to Plaintiff's claim for breach of fiduciary duty.

### E.   Conversion and Civil Theft

Finally, Defendant argues Plaintiff cannot prove conversion and civil theft. Defendant contends Plaintiff has no evidence that Defendant took any blades or proprietary information.  Plaintiff argues there is evidence Defendant took SleekEZ blades.

Disputed issues of material fact exist regarding Plaintiff's conversion and civil theft claim.  Defendant provides a declaration stating he did not steal Plaintiff's blades or information.  (Doc. 63 at ¶ 78; 63-2 at ¶¶ 4-5.)  Plaintiff

counters that Defendant was given access to the blades during his employment, and that Ms. Tipton testified that several boxes of blades went missing after Defendant was terminated.  (Doc. 69 at ¶ 78.a; 69-12 at 69 - 71.)  Plaintiff further states that Ms. Tipton testified that early pictures of the Groom Ninja tool indicate that Plaintiff's 10 inch blades were being cut down and used in Defendant's 9 inch products.  (*Id.*)

Therefore, the Court finds Plaintiff's conversion and civil theft claim presents a genuine issue of material fact.

### F.    Claims for Specific Remedies in Counts 6, 7 and 8

Counts 6, 7 and 8 of the Amended Complaint seek an injunction, punitive damages, and an accounting.  (Doc. 57 at ¶¶ 66-79.)  Because the Court finds summary judgment is not appropriate on Plaintiff's underlying claims for misappropriation of trade secrets, tortious interference with business relations, breach of fiduciary duty, and conversion or civil theft, the related claims for specific remedies should also be allowed to proceed to trial.

## III.   CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that Defendant's Motion in Limine to Exclude Testimony of James Winchell (Doc. 59) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Defendant's Motion for Summary Judgment (Doc. 61) be **DENIED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 8th day of January, 2018.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge